RECEIVED
IN ALEXANDRIA, LA
APR 19 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

MICHAEL MOBLEY,                         CIVIL ACTION
     Appellant                      NO. 09-CV-0662

VERSUS

MICHAEL J. ASTRUE,                      JUDGE DEE D. DRELL
     Appellee                       MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Michael Mobley ("Mobley") filed an application for supplemental security income ("SSI") on April 17, 2007 (protective filing date) alleging a disability onset date of March 1, 2005 (p. 71) due to back pain (Tr. p. 83). That application was denied by the Social Security Administration ("SSA") ((Tr. p. 34).

A de novo hearing was held before an administrative law judge ("ALJ") on October 7, 2008 (Tr. p. 17) at which Mobley appeared with his attorney, a vocational expert ("VE") and a medical expert. The ALJ found that, although Mobley suffers from severe impairments of left knee pain, major depressive disorder, and borderline intellectual functioning (Tr. p. 12), he has the residual functional capacity to perform medium work that does not require significant interaction with the general public and requires no more than simple, repetitive tasks (Tr. p. 13). The ALJ concluded there are jobs which exist in significant numbers in the national economy which Mobley can perform, such as fishing reel assembler,

auto detailer, kitchen helper, and small products assembler (Tr. p. 15) and, therefore, Mobley was not under a disability as defined in the Social Security Act at any time through the date of his decision on October 23, 2008 (Tr. pp. 15-16).

Mobley requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Mobley next filed this appeal for judicial review of the Commissioner's final decision, setting forth the following grounds for relief (Doc. 13):

> 1. The Commissioner erred by not finding the Mobley suffers from a combination of impairments that, when considered together, are disabling.
>
> 2. The Commissioner erred by ignoring the medical expert's testimony presented at Mobley's hearing, and subsequently not explaining why he took a position contrary to the medical expert's opinion that the plaintiff was disabled.
>
> 3. The ALJ erred in proceeding to the testimony of the vocational expert when step 3 of the analysis had resulted in a finding of disability.

The Commissioner responded to Mobley's appeal (Doc. 14) and Mobley filed a reply (Doc. 15). Mobley's appeal is now before the court for disposition.

## Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act.

42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3).

## Summary of Pertinent Facts

At the time of his October 2008 administrative hearing, Mobley was 24 years old, 5'9" or 10" tall, weighed about 280 pounds, had an eighth grade education, and had work experience mowing grass and doing odd jobs (Tr. pp. 20-21).

In January 2007, Mobley was examined in the emergency room for moderate left knee pain which was exacerbated by walking (Tr. pp. 111-121). Mobley was noted to limp heavily (Tr. p. 114). X-rays showed calcification at the medial proximal tibia which was secondary to past trauma (Tr. p. 119). Mobley's knee was immobilized and he was prescribed crutches and instructed to follow up in the orthopedic clinic in a week (Tr. pp. 115-116, 120).

In February 2007, Mobley was examined in the emergency room for complaints of intermittent left knee pain and left shoulder pain, and low blood pressure (Tr. pp. 89-100). Mobley was found to

be 23 years old and obese; he reported joint swelling, lower back pain, and left shoulder pain (Tr. p. 93). Although Mobley's left shoulder and left knee were tender, there was no limitation of movement; his lumbosacral spine was also tender (Tr. p. 94). X-rays showed a healed fracture in his left knee (Tr. p. 96) and an MRI showed a 10 mm benign boney exostosis and an otherwise normal left knee (Tr. pp. 94, 97). An x-ray of Mobley's left shoulder was normal (Tr. pp. 94, 98), and an x-ray of his lumbosacral spine was also normal (Tr. pp. 94, 99-100). Mobley was diagnosed with musculoskeletal pain the left shoulder, left knee, and lumbosacral spine, and was prescribed a medrol dose pack, anaprox, and percocet (Tr. p. 95).

In June 2007, Mobley underwent a mental status examination, clinical interview, and IQ testing by Daniel J. Lonowski, a clinical psychologist (Tr. p. 101). Lonowski noted Mobley had completed the eighth grade in special education, dropped out of school in the ninth grade at 16 years old, was oriented, had linear and goal-directed thought processes, his memory was intact, he had a normal degree of attention, and his concentration was within normal limits (Tr. p. 102). Mobley showed marked dependent and avoidant personality traits (Tr. p. 102). Mobley had a verbal IQ of 76 (borderline range), a performance IQ of 68 (extremely low range), and a full scale IQ of 70 (borderline range) (Tr. p. 103). Lonowski diagnosed major depressive disorder, single episode,

moderate severity at Axis I, dependent and avoidant personality traits and borderline intellectual functioning at Axis II, allergies and low back, upper back, and knee pain at Axis III, unemployment at Axis IV, and current GAF of 65 at Axis V (some mild symptoms OR some difficulty in social, occupational or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships),[1] with a guarded prognosis

---

[1] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").

The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system. The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR"). GAF is a standard measurement of an individual's overall functioning level. The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness. The first number indicates the patient's current GAF, while the second number indicates the highest score reported in the previous year. DSM-IV-TR at 32-34. The GAF scale goes from 0-100: **91-100** - superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities, no symptoms; **81-90** - absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns; **71-80** - if symptoms are present, they are transient and expectable reactions to psycho-social stressors, not more than slight impairment in social, occupational, or school functioning; **61-70** - some mild symptoms OR some difficulty in social, occupational or school functioning, but generally

(Tr. p. 103). Lonowski found that Mobley is unable to cope with the death of a loved one, has never held a full-time job, and has limited work skills (Tr. p. 103). Lonowski noted that Mobley has never had mental health treatment to address his major depressive disorder and anticipated that Mobley's overall condition would substantially improve with treatment, so he would be able to perform some light physical duties and simple jobs (Tr. p. 103). Lonowski also found that Mobley can see and hear adequately, speak effectively (although some topics trigger intense emotional reactions), and travel (Tr. p. 103).[2] Mobley's understanding is in the borderline range of intelligence, although his memory function is within relatively normal limits, his attention and concentration

---

functioning pretty well, has some meaningful interpersonal relationships; **51-60** - moderate symptoms OR moderate difficulty in social, occupational, or school functioning; **41-50** - serious symptoms OR serious impairment with social, occupational, or school functioning; **31-40** - some impairment in reality testing or communication OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood; **21-30** - behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgement OR inability to function in almost all areas; **11-20** - some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication; **1-10** - persistent danger of severely hurting self or others OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death; and **0** - inadequate information. DSM-IV-TR, at 34. Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[2] Lonowski also stated that Mobley is currently unable to perform physical activities that require sustained sitting, standing, walking, lifting, carrying, or handling objects. However, it is unclear from the record what Lonowski relies on for his conclusions regarding Mobley's physical abilities.

varied over time, which would affect his pace and ability to persist to task completions, his social interactions were markedly curtailed, and he would have difficulty adapting to a changing social and vocational life (Tr. p. 103). Finally, Lonowski stated that Mobley could handle his own funds if he received disability benefits (Tr. p. 103).

In July 2007, a mental residual functional capacity assessment form was filled out by psychologist David G. Atkins, who concluded Mobley has moderate limitations in (1) his ability to understand and remember detailed instructions, (2) his ability to carry out detailed instructions, (3) his ability to maintain attention and concentration for extended periods, (4) his ability to sustain an ordinary routine without special supervision, (5) his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) his ability to interact appropriately with the general public, (7) his ability to respond appropriately to changes in the work setting, and (8) his ability to set realistic goals or make plans independently of others (Tr. pp. 122-123). Atkins also filled out a psychiatric review technique which noted that Mobley has moderate limitations in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace (Tr. p. 145).

7

At his October 2008 administrative hearing, Mobley testified that he was right-handed, unmarried, lived with his mother, did not have any children, dropped out of school in the ninth grade, and did not have any other kind of vocational training (Tr. pp. 20-21). Mobley testified that he last worked about two years ago as a handyman and mowing lawns (Tr. p. 21). Mobley testified that he has problems standing and using a weed-eater for long periods of time, which causes his shoulder, upper back and neck to hurt (Tr. p. 22). Mobley testified that, if he stands up too long, his neck starts to swell and hurt, then "it goes" into his left shoulder and upper back, and lasts for a couple of days (Tr. p. 22). Mobley testified that his shoulder hurts if he picks up something heavy and testified that he cannot pick up anything over ten pounds (Tr. pp. 22-23). Mobley testified that his knee has arthritis and "locks" if he stands too long, such as for ten to fifteen minutes (Tr. p. 23). Mobley testified that he cannot walk up stairs because he has to stop and rest before he gets to the top (Tr. p. 23).

Mobley further testified that he cries or gets mad suddenly, such as when he is watching TV (Tr. p. 24). Mobley testified he became depressed after his grandmother died in the late 1990's, his stepfather molested him several years ago, and his father (who lives next door) recently found out he may have lung cancer (Tr. p. 24). Mobley testified that sometimes he feels suicidal, and

sometimes he just gets very angry (Tr. p. 25). Mobley testified that he cannot really help his mother at home because he forgets to do things like turn off the stove (Tr. p. 26). Mobley testified he has never gotten mental health treatment or medication (Tr. p. 26).

The psychologist/medical expert, Jimmie D. Cole,[3] testified as to Lonowski's findings (Tr. p. 27), and stated that, along with his being in the borderline intelligence range, his depression shows he is having a lot of emotional lability, so it would be difficult for him to be able to interact (Tr. pp. 27-28). Cole noted that treatment and medication would probably alleviate Mobley's symptoms (Tr. p. 28).

The ALJ posed a hypothetical question to the vocational expert ("VE") which assumed a person of Mobley's vocational and educational background, with limitations of no significant interaction with the general public and only simple repetitive tasks, and with no strength limitations (Tr. p. 28). The VE testified that such a person could work as an automobile detailer (medium unskilled, SVP 2, DOT[4] 915.687-134) (3125 jobs in Louisiana, 201,850 jobs in the nation), kitchen helper (medium unskilled, SVP 2, DOT 318.687-010) (2615 jobs in Louisiana, 383,325 jobs in the nation), small products assembler (light unskilled, SVP

---

[3] No questions were asked as to Cole's credentials, and there is no curriculum vitae in the record. This is not helpful to the court.

[4] "DOT" refers to the Dictionary of Occupational Titles.

2, DOT 706.684-022) (4300 jobs in Louisiana, 385,700 jobs in the nation), or a fishing reel assembler (sedentary unskilled, SVP 2, DOT 732.684-062)(700 jobs in Louisiana, 11,000 jobs in the nation).

The VE further testified that she could not gauge the impact, on the hypothetical person's ability to work, of the additional condition of unpredictable suicidal or homicidal thoughts or fits of tears or anger, since the effect of that condition on his work performance was a medical question (Tr. p. 30). The VE further testified that, if the person was unable to attend work frequently, such as once a week, due to depression, crying, or anger, he probably would not be able to maintain employment (Tr. p. 30).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence

which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine

whether Mobley (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Mobley has not engaged in substantial gainful activity since April 17, 2007, and that he has severe impairments of left knee pain, major depressive disorder, and borderline intellectual functioning, but that he does not have an impairment or combination of impairments listed in or

12

medically equal to one listed in Appendix 1 (Tr. p. 12). The ALJ also found that Mobley has no past relevant work (Tr. p. 14).

At Step No. 5 of the sequential process, the ALJ found that Mobley has the residual functional capacity to perform the full range of medium work except that he cannot perform work that requires significant interaction with the general public and can only perform simple, repetitive tasks. (Tr. p. 13). The ALJ found that the claimant is a younger individual with a limited school education and no transferable work skills (Tr. pp. 14-15). The ALJ concluded that there are a significant number of jobs in the national economy which Mobley can perform, such as fishing reel assembler, auto detailer, kitchen helper, and small products assembler (Tr. p. 15) and, therefore, Mobley was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on October 23, 2008.

## Law and Analysis

First, Mobley contends the Commissioner erred by not finding he suffers from a combination of impairments that, when considered together, are disabling.

As Mobley points out in his brief, the ALJ erred in stating clinical psychologist Lonowski found Mobley can perform simple jobs (Tr. p. 14). In fact, Lonowski stated (Tr. p. 103),

> "[T]herefore, one could anticipate that if he sought treatment, his overall condition would substantially improve. In that case, he would be able to perform some light physical duties and jobs of a simple nature.

13

> Currently... [h]is attention and concentration are likely to vary over time. This aspect of his functioning would affect his pace and ability to persist to task completions. His social interactions are markedly curtailed. Currently, he would have difficulty adapting to a changing social and vocational life."

Although the ALJ may have misunderstood Lonowski, it is clear from Mobley's past work experience mowing lawns and doing small handyman repairs that Mobley can perform simple, repetitive tasks. Moreover, medical expert/psychologist Cole testified only that Mobley would have difficulty interacting with others.

Mobley also points out that Lonowski noted he was anxious and nervous during all stages of the exam, cried intensely and hyperventilated when speaking of deceased family members, and was "tearful and apprehensive" during the IQ test. Lonowski diagnosed depression; both Lonowski and Cole stated that Mobley needs treatment. The ALJ noted that Mobley has not sought treatment, contending he cannot afford it.[5] Cole noted there was no history of treatment and only one diagnosis of depression, and found moderate limitations in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace.

If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of

---

[5] The undersigned notes, as did the ALJ, that Mobley could have sought free or reduced cost treatment at the state mental health clinic. The Louisiana Department of Health and Hospitals, Office of Mental Health, at http://www.dhh.louisiana.gov/offices/?ID=62.

14

disability. <u>Johnson v. Bowen</u>, 864 F.2d 340, 348 (5th Cir. 1988); <u>Lovelace v. Bowen</u>, 813 F.2d 55, 59 (5th Cir. 1987); 20 C.F.R. §§ 404.1530, 416.930. Compare, <u>Madis v. Massanari</u>, 277 F.3d 1372 (5th Cir. 2001). Since the psychologists stated Mobley's depression could be controlled with medication and therapy, but he has not sought treatment, Mobley's depression cannot serve as a basis for disability.

Moreover, all three psychologists, Lonowski, Cole, and Atkins, found Mobley is limited in his ability to interact with the public. Accordingly, the ALJ limited the range of jobs Mobley can perform to those with limited public interaction. All of the psychologists also found Mobley has difficulty with detailed instructions, so the ALJ limited the range of jobs he can perform to simple, repetitive tasks.

Since the work limitations imposed by the ALJ are consistent with the psychologists' findings, the ALJ did not err in concluding Mobley can perform simple, repetitive tasks with limited interaction with the public.

Mobley also contends the ALJ erred in failing to consider that his knee, shoulder, and back pain are aggravated by his obesity. Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.

The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). Also, Ripley v. Chater, 67 F.3d 552 (5th Cir. 1995)("To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain.").

As noted by the ALJ, there are no objective medical findings to support Mobley's complaints of knee, shoulder and back pain. All of the tests had negative results. Moreover, the only time Mobley sought treatment for his knee, shoulder and back pain was in January and February 2007; he has not made any complaints since then. Mobley has the burden of proving a medically determinable impairment, demonstrated by medically acceptable clinical and laboratory diagnostic techniques, to support his complaints of pain and he has not carried that burden. Ripley v. Chater, 67 F.3d 552, 556 (5th Cir. 1995) ("Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity."); Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994), cert. den., 514 U.S. 1120, 115 S.Ct. 1984 (1995). However, the ALJ gave Mobley the benefit of the doubt and found he suffers from knee pain, even while noting the lack of objective evidence.

Mobley's obesity, by itself, is not enough to support an award of benefits. Obesity is not a listed impairment, although it can reduce an individual's occupational base for work activity in combination with other ailments. <u>Beck v. Barnhart</u>, 205 Fed. Appx. 207, 211 (5th Cir. 2006), citing SSR 02-1p, "Evaluation of Obesity." Although Mobley contends the ALJ erred in failing to consider his obesity in combination with his other physical impairments, because Mobley did not prove any other medically determinable physical impairments, the ALJ did not err in his respect. Apparently, Mobley's knee pain is due to his obesity, since no other cause was found. Therefore, this issue is meritless.

<u>Issue No. 2 - Medical Expert's Testimony</u>

Next, Mobley contends the Commissioner erred by ignoring the medical expert's testimony presented at Mobley's hearing, and subsequently not explaining why he took a position contrary to the medical expert's opinion that the plaintiff was disabled.

Jimmie Cole, the psychologist who testified as a medical expert at Mobley's hearing, did not testify that Mobley is disabled meets or equals a listing. In response to whether he had an opinion as to whether or not Mobley meets or equals any of the listing, Cole essentially testified that Mobley's impairments (performance IQ and depression) would have to be considered in combination to see if he meets or equals a listing (Tr. pp. 27-28):

> "It's probably a -- you know, maybe a combination as what
> -- let's see. You know he has this performance of 68,

17

and if you have that along with -- but another significant factor, if the knee is a, a, factor, well, then that's a , you know, a possibility there, that that would be -- and also, there's the , depression issues, where he has the, you know, the suicidal thoughts and homicidal thoughts. He's obviously having a lot of emotional lability and so forth with that. I think it would be pretty difficult for him to be able to interact. It's unfortunate he hasn't had some treatment for this, because with some medication, probably some of these things could be alleviated. But that's what we have right now."

Since Cole did not state that Mobley meets or equals a listing, this argument is meritless.

## Issue No. 3 - Listings

Mobley further argues that the ALJ erred in proceeding to the testimony of the vocational expert when step 3 of the analysis had resulted in a finding of disability.

Step 3 is the point at which the ALJ determines whether the claimant meets or equals a listing. Mobley contends that, since the medical expert, Cole, found Mobley met or equaled a listing, the ALJ's analysis should have stopped at Step 3. However, since Cole did not testify that Mobley met a listing, as discussed above, this argument is meritless. Moreover, Mobley does not state which specific listing he believes he meets.

This issue is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and Mobley's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 19th day of April 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE